UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

THE SMITHFIELD PACKING COMPANY,
INCORPORATED,

                Plaintiff,

v.                                        Civil Action No. <u>2:11CV294</u>

V. SUÁREZ & CO., INC., PACKERS
PROVISIONS CO. OF PUERTO RICO, INC.,
and FRESH MARK, INC.,

                Defendants.

**<u>PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR IN THE ALTERNATIVE, TO TRANSFER VENUE</u>**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   STATEMENT OF FACTS....................................................................................6

III.  ARGUMENT.....................................................................................................12

       A.     Defendants' Request for Dismissal Based on Improper Venue Is Misplaced.............................................................................................12

       B.     Defendants Fail to Meaningfully Address and Admit the Applicability of the First-to-File Rule. ............................................................................16

       C.     Defendants Have Not Met Their Heavy Burden to Transfer.  Moreover, This Case Cannot Be Transferred for the Mere Convenience of a *Single Defendant*.............................................................................................18

IV.   CONCLUSION ..................................................................................................23

## TABLE OF AUTHORITIES

### Cases

*Aguakem Caribe, Inc. v. Kemiron Atlantic, Inc.*, 218 F. Supp.2d 199 (D. P.R. 2002) ................. 16

*Allied-General Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610 (4th Cir. 1982) ....... 18

*Ancient Sun Nutrition, Inc. v. Oregon Algae, LLC*, 2010 WL 3719503
   (W.D.N.C. Sept. 17, 2010) ................................................................................... 19, 22-23

*BMJ Foods Puerto Rico, Inc. v. Metromedia Steakhouse Co.*,
   562 F. Supp.2d 229 (D. P.R. 2008) ....................................................................................... 16

*Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp.2d 627 (E.D.Va. 2006) ........................... 16, 17

*Carbide & Carbon Chem. Corp. v. U.S. Indus. Chems., Inc.*, 140 F.2d 47 (4th Cir. 1944) ..... 17-18

*City Nat'l Bank v. Clark*, 2006 WL 456162 (S.D.W.Va. Feb. 23, 2006) ..................................... 14

*Colbond, Inc. v. North American Green, Inc.*, 2000 WL 33422746
   (W.D.N.C. May 8, 2000) ................................................................................................ 18-19

*Collins v. Straight, Inc.*, 748 F.2d 916 (4th Cir. 1984) ................................................................. 19

*Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178 (4th Cir. 1974) ........................ 17

*Fisher v. Rite Aid Corp.*, 2010 WL 2332101 (D. Md. June 8, 2010 ...................................... 17, 18

*Gebr. Brasseler GMBH & Co. KG v. Abrasive Tech.*, 2009 WL 874513
   (E.D.Va. Mar. 27, 2009) ...................................................................................................... 14

*Genentech, Inc. v. Eli Lilly and Co.*, 17 U.S.P.Q.2d 1241 (Fed. Cir. 1993) ................................. 18

*The Learning Network, Inc. v. Discover Comm'n, Inc.*, 11 Fed. Appx. 297
   (4th Cir. 2001) (unpub.) ...................................................................................................... 22

*Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) ................................................................. 14

*Neuralstem, Inc. v. Stemcells, Inc.*, 573 F. Supp.2d 888 (D. Md. 2008) ......................... 18, 21, 22

*Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 874 F. Supp. 630 (S.D.N.Y. 1995) ................. 18

*Smart Tech., Inc. v. Polynesian Corp.*, 2004 U.S. Dist. LEXIS 29483 (E.D.Va. Oct. 20, 2004) . 17

*Titan Atlas Manuf., Inc. v. Sisk*, 2011 WL 3665122 (W.D.Va. Aug. 22, 2011) ............... 15, 19, 20

*USA Labs., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*,
   2009 WL 1227867 (E.D.Va. May 4, 2009) .................................................................... 13-14

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581 (4th Cir. 2004) ............ 17

*Young Again Prods., Inc. v. Acord*, 307 F. Supp.2d 713 (D. Md. 2004) ....................................... 14

### Statutes

28 U.S.C. § 1404(a) ............................................................................................................. *passim*

Plaintiff The Smithfield Packing Company Incorporated, by and through its undersigned counsel, hereby submits this Response Memorandum in Opposition to Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue ("Defendants' Motion").

## I.    PRELIMINARY STATEMENT

Plaintiff The Smithfield Packing Company Incorporated ("Smithfield Packing" or "Smithfield") respectfully submits this Response Memorandum of Law to the Motion to Dismiss or Transfer filed by Defendants Packers Provision Co. of Puerto Rico, Inc. ("Packers") and V. Suárez & Co. ("V. Suárez") (collectively, "Suárez"), and joined by Defendant Fresh Mark, Inc. ("Fresh Mark") (with the three Defendants collectively, "Defendants"). While often a cliché, it is remarkably true in this instance that Defendants' Motion is just as notable for what it does not say as for what it does. For example, while focusing *solely* on one claim in Smithfield Packing's Second Amended Complaint—Smithfield Packing's infringement claim against Suárez only— and relying entirely on a position that one can only sue each trademark infringer where *that* infringer is based and infringing, Defendants' Motion fails to note the following important points:

First, Smithfield Packing's Second Amended Complaint (like its original Complaint) includes a Declaratory Judgment claim asking the Court to declare that Virginia entity Smithfield Packing is the rightful trademark owner of the SHORGOOD marks for chicken franks. This is not a throwaway claim or something put in Smithfield Packing's Complaint in anticipation of Defendants' Motion. Rather, this dispute began because Suárez wrote Smithfield Packing a cease and desist letter, claiming that Suárez owned the SHORGOOD trademarks and demanding that Smithfield Packing stop production of chicken franks bearing Smithfield Packing's SHORGOOD marks. Thus, the core of Smithfield Packing's Complaint—not mentioned anywhere in Defendants' Motion—is to have this Court declare that Smithfield Packing cannot

be an infringer of the SHORGOOD marks because, as the Court will see after hearing from Smithfield Packing's Virginia witnesses, reading Smithfield Packing's Virginia documents, and the testimony of third-party witnesses based in Virginia and states closer to Virginia than Puerto Rico, Smithfield Packing owns those marks. **That one point alone is enough to defeat Defendants' Motion.**

Second, reading only Defendants' Motion, one would never suspect the double-dealing that Defendants are trying to accomplish in the United States District Court in Puerto Rico. Two months after Smithfield Packing filed its Complaint in this Court, Suárez filed an almost identical complaint in substance against Smithfield Packing in Puerto Rico on the exact same history, facts, and issues and alleging trademark and trade dress infringement *by* Smithfield Packing *in Virginia.* Defendants' sole basis for their motion here is that an alleged trademark infringer can only be sued where it is based and committing infringements. In the Puerto Rico action, however, Suárez contrarily demands that its own trademark claims against Smithfield Packing are proper, even though all of the actions that they allege to be infringements occurred in Virginia. Amazingly, Defendants now only make reference to Suárez's Puerto Rico action to tell this Court that it has somewhere to send this action without worrying about injustice or delay.

The truth is that Suárez's Puerto Rico action is now subject to a pending motion to dismiss that action or transfer it to this Court due to the first-to-file rule. In response to the motion filed by Smithfield Packing in Puerto Rico, Suárez did not dispute the case law cited by Smithfield Packing in any way, did not file any Declarations, and did not cite any of its own case law. Perhaps they knew at the time that anything they said in Puerto Rico to try to keep their claims against Smithfield Packing there would only hurt their arguments in this Court, since they

are now trying to tell this Court that, as an alleged trademark infringer, they must be sued in their home court, while ignoring the fact that the same argument mandates transfer of their Puerto Rico action to Virginia. Whatever Defendants' strategy, it is a clear abuse of the legal system. Attached to this Memorandum as Exhibits A, B, C, and D are both sides' motion papers in the District of Puerto Rico on the motion to dismiss or transfer Suárez's claims to this Court.

Third, as they are based on the exact same facts, events, and circumstances, every single claim in Suárez's Puerto Rico Complaint would be a compulsory counterclaim in the instant action. So, this Court cannot look at Defendants' Motion in a vacuum. It will not *just* be hearing Smithfield Packing's trademark infringement claim against Suárez (as well as Smithfield Packing's declaratory judgment action and an infringement claim against Ohio defendant Fresh Mark) if it denies Defendants' Motion. It will also be hearing Suárez's infringement claims against the Virginia entity Smithfield Packing.

Fourth, and related to the points above, is that because Smithfield Packing and Suárez have opposing claims based on the same facts and issues in two separate courts, the first-to-file rule is clearly controlling. Yet, just as Suárez did in Puerto Rico, Defendants bury their heads in the sand and choose not to address this rule of law at all. They do not dispute the applicability of the rule. They just choose to ignore it. There is a reason why we have a first-to-file rule. It is to avoid a waste of judicial resources. Defendants' Motion would lead to exactly that. Its focus solely on Smithfield Packing's infringement claim, ignoring both Smithfield Packing's other claims as well as Suárez's compulsory counterclaims (not to mention the existence of Ohio Defendant Fresh Mark and potential other non-Puerto Rico third-party witnesses) is illogical. If Defendants' argument were correct and all the other facets of this dispute were ignored, there would literally be five different cases going on: Smithfield Packing's Declaratory Judgment

claim in this Court in Virginia; Smithfield Packing's claim against Suárez in Puerto Rico; Smithfield Packing's claim against Fresh Mark in Ohio; Suárez's declaratory judgment claim in Puerto Rico; and, Suárez's infringement claims against Smithfield Packing back in this Court.

Fifth, just as Defendants' Motion ignores their own claims as well as Smithfield Packing's Declaratory Judgment claim, the motion ignores the existence of a completely non-Puerto Rico defendant in this case: Fresh Mark. Fresh Mark is an Ohio company that is infringing upon Smithfield Packing's SHORGOOD trademarks based on Fresh Mark's production of chicken franks bearing the SHORGOOD marks in Ohio. Clearly, Puerto Rico is not more convenient to Ohio than Virginia is. Defendants' Motion ignores the presence of witnesses and documents in Ohio, where Defendant Fresh Mark is located. Defendants' Motion also ignores the presence in Virginia of all of Smithfield Packing's witnesses and documents, much of which were clearly identified in the Declaration that Smithfield Packing filed in support of its Motion to dismiss or transfer the case from Puerto Rico.[1] Defendants' Motion also ignores the possible existence of third-party witnesses, such as Conagra located in Nebraska. In fact, Defendants' Motion addresses *only* Suárez's convenience. That is not the proper way to look at the balance of conveniences. In sum, especially because of all the claims crossing among the parties, the conveniences in this case cannot possibly weigh more towards Puerto Rico than Virginia. As such, there is absolutely no reason to upset the first-to-file rule, never mind enough reasons to satisfy Defendants' *very* heavy burden under the case law.

Finally, although it does not affect the invalidity of Defendants' Motion or the clear applicability of the first-to-file rule, we must point out that there are substantial misstatements of

---

[1] We note again that Suárez offered no declaration in response to Smithfield's Declaration in the Puerto Rico action. It is peculiar that they finally chose to do so in the instant action.

fact in Defendants' Motion's Statement of Facts.  Most importantly, in the first Paragraphs 14-16 of the Motion's Statement of Facts (the Statement of Facts accidentally has repeat numbering), Suárez affirmatively states (or strongly implies) that Smithfield Packing had no relation to the SHORGOOD brand of chicken franks until **2005**.  Suárez declares that Conagra informed Packers (who they say had been marketing the SHORGOOD brand) in 2004 (according to the Pietri Declaration) of Conagra's intention to cease manufacturing SHORGOOD chicken franks, but that Packers could continue to *market* the brand, so in 2005, Packers "*then procured manufacturing of chicken franks from a plant which was owned by Smithfield*" (emphasis added).[2]  This is a complete misstatement of fact as Suárez clearly knew that Smithfield Packing had been manufacturing the SHORGOOD chicken franks purchased by Packers since at least 1995 (*see* Ex. A to the Response Declaration of Joseph Bailey, filed with this Response), and that Packers role, which was merely as a re-seller of Smithfield Packing-manufactured SHORGOOD chicken franks, did not change whatsoever when Conagra abandoned the brand. Smithfield Packing has always had full control in its relationship with Suárez (and before that, Packers) as to the quality, production, and pricing of the SHORGOOD products, and Suárez's present attempt to contrive some sort of claim to trademark rights, as well as to now rewrite history, is very troubling.  Notwithstanding, the misstatements by Suárez still do not affect the outcome of Defendants' Motion and the applicability of the first-to-file rule.

The Court should also note that while Suárez states that they have "agreed" to a stay of the Puerto Rico action (Defendants' Mem. at 12), that is not accurate.  There is no such agreement.  When it became obvious that Suárez had no response to Smithfield Packing's

---

[2] Note that Suárez does not say that Conagra assigned it the SHORGOOD marks or told Suárez that Suárez could have or would own the marks, or that Suárez then had any quality control over the production of the product bearing the marks, or, frankly, anything that would give Suárez any indication that it had an ownership interest in the marks.

motion in Puerto Rico, Suárez *offered* in their papers before that court that they would agree to a short stay so that they could file the instant motion, and essentially asked the court, in return, not to dismiss or transfer their Puerto Rico action. Neither Smithfield Packing nor the Puerto Rico court has agreed to any such proposal and Smithfield Packing's motion to dismiss or transfer is currently pending before that court. The papers from both sides related to Smithfield Packing's motion in Puerto Rico are attached to this Memorandum as Exs. A-D. Those papers reveal glaring inconsistencies between Suárez's positions before that court and this one.

As we stated to the District Court in Puerto Rico, Suárez is doing nothing more than forum shopping in an effort to gain what it perceives as a more favorable forum, and in the process undermine the priority of Smithfield Packing's first-filed action and force Smithfield Packing to litigate the same issues in a distant forum. This Court should not allow Suárez to succeed in its attempt at gamesmanship. The policies which underlie both the Fourth and First Circuit's first-to-file rule including, foremost, the interests of judicial comity and conservation of resources, dictate that the issues should all stay in this venue.

## II.    STATEMENT OF FACTS

Smithfield Packing was founded in 1936 and has its headquarters and principal place of business in Smithfield, Virginia. Smithfield Packing's primary lines of business include fresh pork, smoked meats, bacon, cooked hams, and hot dogs, which are sold to the retail, foodservice and deli channels. Smithfield Packing products are sold under various brands throughout the United States and exported to approximately 30 countries. See Exhibit B to this Memorandum, which is the Declaration of Joseph Bailey, submitted in support of Smithfield Packing's Motion to Dismiss, Transfer or Stay filed August 18, 2011 in the United States District Court for the District of Puerto Rico ("Bailey Decl."), at ¶ 3. Smithfield Packing has many employees based

in its Smithfield headquarters, and Smithfield is, of course, located within the jurisdiction of the United States District Court for the Eastern District of Virginia, Norfolk Division, where the instant action was lodged. *Id.* at ¶ 2.

Joseph Bailey (Senior Brand Manager), Ron Marsh (Vice President of Sales, Regional Accounts), and Chad Baker (Senior Vice President of Sales and Marketing) are each employees of Smithfield Packing who work in Smithfield, Virginia and are likely to have information relevant to this dispute, making them potential or likely witnesses and/or deponents. *Id.* at ¶ 4. All of Smithfield Packing's main documents, including its documents relevant to its use, marketing, and quality control of the SHORGOOD trademarks are located in Smithfield Packing's Smithfield, Virginia headquarters. *Id.* at ¶ 5.

As detailed in the Second Amended Complaint (and the original Complaint), Smithfield Packing has sold its line of chicken franks under the SHORGOOD marks for many years to Suárez and others. Initially, Smithfield Packing (through its predecessor-in-interest, Valleydale Foods, Inc.) sold products under the SHORGOOD mark under a license from Conagra Foods ("Conagra"). *See* Compl. at ¶ 14; Bailey Decl. at ¶ 7; Response Declaration of Joseph Bailey, at ¶¶ 7-11 and Ex. A. Neither party disputes that Conagra, with its principal place of business in Omaha, Nebraska, initially owned the SHORGOOD trademarks. Compl. at ¶ 14; Suárez's Puerto Rico Compl. (Ex. B to Defendants' Motion), at ¶ 7. For many years—while Conagra owned the mark—Smithfield Packing, as the manufacturer, packer, and seller of the SHORGOOD chicken franks, paid Conagra a license fee to use the SHORGOOD marks. Bailey Decl. at ¶ 7; Compl. at ¶14. During that time (and thereafter as explained below), the SHORGOOD chicken franks were manufactured and packaged by Smithfield Packing in Portsmouth, Virginia. Bailey Decl. at ¶ 7.

During that time and until May 2011, Suárez purchased SHORGOOD chicken franks from Smithfield Packing to resell in Puerto Rico. Bailey Decl. at ¶ 8; Compl. at ¶ 12. One of the products that Smithfield Packing sells and has sold to Suárez is the line of chicken franks sold under Smithfield Packing's SHORGOOD marks. *Id.* This is not the only Smithfield Packing manufactured and packaged good that Suárez purchases from Smithfield Packing and resells. Bailey Decl. at ¶ 14. Additional branded products include Gwaltney and Aberdeen. *Id.* Despite the sale of those additional goods from Smithfield Packing to Suárez over the years, this dispute over the SHORGOOD marks is the first time there has been a dispute between Suárez and Smithfield Packing over one of Smithfield Packing's marks. *Id.* Suárez has never challenged one of Smithfield Packing's marks or tried to claim it as Suárez's own before. *Id.*

All of the manufacturing and packaging of the SHORGOOD product is done by Smithfield Packing in Portsmouth, Virginia. Bailey Decl. at ¶ 7. Suárez does not specify ingredients, manufacture, package, inspect, or otherwise control the quality or consistency of SHORGOOD chicken franks. Bailey Decl. at ¶10; Compl. at ¶ 13.

In or about 2005, Conagra informed Smithfield Packing of Conagra's intention to no longer use the SHORGOOD brand itself, after which SHORGOOD products were sold exclusively by Smithfield Packing. Bailey Decl. at ¶ 9; Compl. at ¶ 15. During this time, Smithfield Packing controlled the entire quality and formulation of the product, and Smithfield's use of its SHORGOOD trademarks has been open and notorious through sales to other customers in addition to Suárez. *Id.* There was no difference in the Smithfield Packing/Suárez relationship after 2005. Smithfield Packing still was entirely responsible for manufacturing, packaging, and selling the SHORGOOD chicken franks, and Suárez simply purchased the SHORGOOD products for resale—and that involvement was limited in that Suárez only resold in Puerto Rico.

Bailey Decl. at ¶ 10; Compl. at ¶¶ 12-15.  The only change in the world of SHORGOOD products was that Smithfield Packing no longer had to pay a license fee to Conagra because Conagra had abandoned the trademark.  *Id.*[3]

In February 2009, Smithfield Packing filed federal U.S. Trademark Application Nos. 77668561 and 77668559 and subsequently claimed a date of first exclusive use of at least as early as 2006, such that no confusion would exist as a result of Smithfield Packing's earlier licensing of the brand from Conagra.  The applications were published in June 2009, and no parties opposed the applications.  Bailey Decl. at ¶ 11; Compl. at ¶ 16.  The existence of these registrations has been open and notorious since at least as early as the publication thereof; however, the existence of the applications was also publicly ascertainable from the date of their original filing through the United States Patent and Trademark Office website.

On June 17, 2011, United States Trademark Registration Number 3,978,570 for the word mark SHORGOOD for use in association with hot dogs and hot dogs made primarily from poultry issued from Trademark Application No. 77/668,559, in the name of The Smithfield Packing Company, Incorporated.  Bailey Decl. at ¶ 11; Compl. at ¶ 17.  On June 17, 2011, United States Trademark Registration Number 3,978,571 for a design mark incorporating the SHORGOOD word mark for use in association with hot dogs and hot dogs made primarily from poultry issued from Trademark Application No. 77/668,561, in the name of The Smithfield Packing Company, Incorporated.  Bailey Decl. at ¶ 11; Compl. at ¶ 18.

---

3 As the Court will note, the facts regarding the timeline, Smithfield Packing's license with Conagra, the long-time manufacturing and sales of SHORGOOD chicken franks by Smithfield Packing for at least a decade before Conagra abandoned its trademark, and the unchanging relationship between Suárez and Smithfield Packing is in marked contrast to Suárez's papers wherein they imply and/or directly state that prior to 2005, Smithfield had no involvement with the SHORGOOD brand, and that in 2005, Conagra told *Suárez* that Suárez could continue to "market" the SHORGOOD marks, whereupon Suárez *then first hired* Smithfield to produce Suárez's SHORGOOD chicken franks.

Despite the nature of the parties' relationship, with Smithfield Packing manufacturing, packaging, and selling the SHORGOOD chicken franks for years in Virginia, and having had an approved trademark application published by the United States Trademark Office for almost two years, on April 7, 2011, V. Suárez sent correspondence to Smithfield Packing's Virginia headquarters purporting to order that Smithfield Packing cease production of its SHORGOOD products, as it stated that it had procured an alternate source for SHORGOOD branded products. Bailey Decl. at ¶ 12; Compl. at ¶ 19.   Around the same time, Suárez stopped buying SHORGOOD branded products from Smithfield Packing. *Id.*

On April 8, 2011, on belief that an Ohio entity named Sugardale Foods, Inc. ("Sugardale"), was the "alternate source" that V. Suárez had referred to, representatives of Smithfield Packing informed Sugardale of Smithfield Packing's ownership of the SHORGOOD trademarks and trade dress.  Compl. at ¶ 20.

Smithfield Packing then sent a letter (on April 11, 2011) to V. Suárez informing V. Suárez that Smithfield Packing was the owner of the SHORGOOD trademarks, and refusing V. Suárez's purported demand that Smithfield Packing cease production of products under its own trademarks.  *Id.* at ¶ 21.  Approximately a month later, Smithfield Packing discovered packaging containing hot dog products being sold in commerce in the United States, wherein said product was not produced by or authorized by Smithfield Packing, although identical SHORGOOD trademarks and trade dress to Smithfield Packing's products were employed on the packaging. The packaging further included the statement "Packaged for V. Suárez."  Bailey Decl. at ¶ 13; Compl. at ¶ 22.

Samples of the packaged product being sold by V. Suárez included an establishment number ("P6828") identifying Ohio manufacturer Sugardale Foods, Inc. as the manufacturer of the goods being sold by V. Suárez.  Bailey Decl. at ¶ 13; Compl. at ¶ 23.

On May 24, 2011, Smithfield Packing filed the instant original Complaint against Suárez, seeking a *declaratory judgment that Smithfield Packing owns the SHORGOOD trademarks for chicken franks*.  That Complaint also alleged trademark infringement, false designation of origin under the Lanham Act, trade dress infringement under the Lanham Act, and unfair competition. It was amended on July 7, 2011, to add Ohio manufacturer Sugardale as a defendant.[4]

After its May filing, Smithfield Packing immediately sent a copy of the Complaint to Suárez, warning Suárez that it would serve the Complaint on Suárez unless an amicable solution could be reached.   Meanwhile, unbeknownst to Smithfield Packing, Suárez was seeking to further applications it had made for the SHORGOOD mark in Puerto Rico, applications for which no information was publicly available.   *See* Suárez's Puerto Rico Complaint at ¶ 30. Once the time frame for opposition to the Puerto Rico trademark application passed according to Suárez—*see id.*—(and notwithstanding that Smithfield Packing had clearly stated that it disputed Suarez's claim of ownership of the marks, a fact which Suarez did not disclose to the Puerto Rico trademark office), Suárez filed and served its Puerto Rico complaint on July 28, 2011, more than two months after Smithfield Packing filed the instant action in this Court.   The claims brought by Suárez in Puerto Rico are identical in substance in every way to the instant action.

---

[4]  Sugardale later informed counsel for Smithfield Packing that it should be listed as Fresh Mark, Inc. on Smithfield's Amended Complaint.  In the same communication, it gave Smithfield its consent to change the party name from Sugardale to Fresh Mark, Inc.  Because Suárez had made the same name error in its Complaint in Puerto Rico, Suárez and Smithfield Packing each consented to a change in the other's complaints without a waiver of any other rights.  Smithfield Packing filed an unopposed motion—which was granted—to make that amendment to its Complaint on August 12, 2011.  No substantive changes were made to the Amended Complaint.

*Compare* Compl. *with* Suárez's Puerto Rico Complaint. They are based on the same facts and involve the same companies. *See id.* The one additional claim in the Puerto Rico action is a claim for tortious interference, which alleges that Smithfield Packing's communications with Sugardale/Fresh Mark, which occurred entirely outside of Puerto Rico, were improper. This claim involves the same parties and the same facts as the instant action, and is certainly a compulsory counterclaim in the instant action—none of which Suárez denied in response to Smithfield Packing's motion papers in Puerto Rico. *See id. See also* Exs. A-D attached to this Memorandum.

## III.   ARGUMENT

### A.   Defendants' Request for Dismissal Based on Improper Venue Is Misplaced.

Defendants argue that the instant action must be dismissed because, even where there are multiple alleged infringers from multiple states, venue in a trademark infringement case exists solely in the forum where a given defendant is based and where it committed its trademark infringement (so presumably from Defendants' argument, Smithfield Packing must sue Suárez in Puerto Rico and separately sue Fresh Mark in Ohio despite the claims all arising out of the same facts and controversy, and interestingly enough, that Suárez must sue Smithfield Packing in Virginia). Defendants provide *absolutely no* authority for this proposition. Unlike Suárez's response to Smithfield Packing's Puerto Rico motion wherein Suárez decided not to cite cases, Defendants here do cite some cases in their venue section in Defendants' Motion. However, they are a mish-mash of cases, from courts almost entirely outside this Circuit, that do not support the position they advance. For example, they use five citations to essentially state that trademark infringement is a tort (at 8), but nowhere do they cite a case where venue was actually found to be improper where plaintiff brought a declaratory judgment claim (as Smithfield

Packing does here) in Plaintiffs' home forum regarding the ownership of intellectual property (or otherwise) or where a defendant had also brought infringement claims against the plaintiff (as Suárez has done).

Strangely, the cases cited by Defendants (especially the couple from this Circuit) do not seem to have anything to do with the point they are trying to make.  For example, they cite *USA Labs., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 2009 WL 1227867 (E.D.Va. May 4, 2009) (Slip Op.) to confirm that it is "good law" in this district that if an alleged infringement occurred in one district, only that district would be a proper venue.  But *USA Labs* is not a wrongful venue case, the court in that case noted that neither side contested venue and actually states in a separate section that "[i]n federal cases where defendant is a corporation, venue is proper in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  *Id.* (quotations omitted).  In fact, although not particularly relevant to the instant action, *USA Labs* actually denies a defendant's motion to transfer out of the Eastern District of Virginia even though the plaintiff was from Tennessee, the defendant was from Florida with almost all its witnesses in Florida, and there were far fewer sales into Virginia than many other states.  The court held that plaintiff is allowed to pick any forum convenient to it where personal jurisdiction exists, and a defendant cannot move a case to another forum and simply "shift the balance of inconvenience from defendant to the plaintiff." *Id.* As *USA Labs* is not a wrongful venue case, and as the court never states that venue would *only* be proper where an infringement occurs, and as it does not deal with a declaratory judgment claim, and as the court makes clear that venue could be proper in every district in the United States at the same time as long as the defendant corporation was subject to personal jurisdiction in each, it is unclear why Defendants cite *USA Labs*.  Of course, even putting all of that aside, there is no

possibility that venue could ever be improper where a plaintiff files a declaratory judgment claim

(especially based on its history and ownership of a trademark) in its home forum. *See, e.g.,*

*Young Again Prods., Inc. v. Acord*, 307 F. Supp.2d 713, 718 (D. Md. 2004); *City Nat'l Bank v.*

*Clark*, 2006 WL 456162 (S.D.W.Va. Feb. 23, 2006).[5] *Cf. Gebr. Brasseler GMBH & Co. KG v.*

*Abrasive Tech.*, 2009 WL 874513 (E.D.Va. Mar. 27, 2009). Furthermore, the facts of this

dispute and Suárez's infringement claims against Smithfield Packing show that the entirety of

the issues have a substantial basis in this District and need to be heard in this Court where the

first action was filed.

As this Court will note from Smithfield Packing's Puerto Rico memoranda (Exs. A & D),

even though Suárez sued Smithfield Packing in Puerto Rico for alleged trademark infringement

by Smithfield Packing in Virginia on the exact same facts and issues as the instant action, when

Smithfield Packing filed a motion to dismiss or transfer the Puerto Rico action, it alleged

improper venue solely based on the first-to-file rule. It did not base its motion on some claim

that Puerto Rico would be an improper venue had all the parties filed their respective disputes

there in the first place. Given both parties' claims for declaratory judgments and claims against

---

5 *In Clark*, plaintiff filed for a declaratory judgment against an Ohio resident based on work the defendant did in Ohio, asking the court to find that it did not have to give defendant certain work benefits. After stating that plaintiff only needed to make a "prima facie" showing of proper venue, the court stated that in determining whether venue is proper, "a court should not focus only on those matters that are in dispute or directly led to the filing of the action. Rather, it should review 'the entire sequence of events underlying the claim.'" *Id.*, at *5 (*quoting Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). The only contacts the court noted for plaintiff's home forum were that when defendant was paid by plaintiff, plaintiff's checks and benefits to defendant originated in plaintiff's home forum--but that was enough to be "substantial" for purposes of venue. Obviously, since Smithfield Packing's Declaratory Judgment claim is entirely related to Virginia and given the importance of the parties' longstanding relationship and contacts and Smithfield Packing's production of SHORGOOD chicken franks in Virginia, the instant action has far more connection to this forum. Similarly, in *Young Again*, plaintiff sued defendants for trademark infringement in plaintiff's home forum. The court disposed of the improper venue motion in a paragraph and did not note nearly as many contacts between the events leading to the action and the forum as are present in the instant action.

each other for infringement, such an argument would have been frivolous and a waste of judicial resources.[6]

As pointed out earlier in this Memorandum, Smithfield Packing's declaratory judgment claim—which was rightfully based on Suárez's sending of a cease and desist letter to Smithfield Packing—in and of itself makes Virginia an entirely proper venue.  Smithfield is based in Virginia, its witnesses and documents are based in Virginia, its evidence regarding its Conagra relationship is located in Virginia, it produces SHORGOOD chicken franks in Virginia, and the overwhelmingly "substantial part of the events or omissions giving rise" to Smithfield Packing's Declaratory Judgment claim (as well as a substantial portion of both sides' infringement claims) occurred in Virginia.  It is not as if Smithfield just chose a random venue to hurt Defendants.  To allege that Virginia is not a proper venue is an argument without merit when the Declaratory Judgment claim alone is based on so many more Virginia contacts and evidence than other cases in this Circuit where venue was found acceptable.  *See, e.g., Titan Atlas Manuf., Inc. v. Sisk*, 2011 WL 3665122 (W.D.Va. Aug. 22, 2011) (Slip Op.) (acceptability of venue "clear" even though a declaratory judgment action arose only from "defendants' letters and the telephone conversation" to plaintiff in Plaintiff's home forum).

In addition to ignoring Smithfield Packing's Declaratory Judgment claim and Suárez's own infringement claims based on Smithfield Packing's Virginia actions, Suárez completely fails to address the existence of Fresh Mark.  Fresh Mark, an Ohio company, manufactures and packages the infringing SHORGOOD chicken franks in its Ohio plant.  Its witnesses are very likely located in Ohio—there is certainly no proffer that they are located in Puerto Rico.  Any

---

[6] Suárez does not explain why, if valid, the arguments in Defendants' Motion would not **mandate** dismissal of Suárez's Puerto Rico claims.

documents it holds are in Ohio. Under Suárez's unsupported argument, there is only one proper venue for any claim against any defendant. That is remarkably false. Furthermore, in a case like this with issues and evidence scattered among the parties, Suárez offers no reason why the one forum for these issues should be Puerto Rico as opposed to Virginia or Ohio. Again, clearly Suárez cannot be claiming that, despite the existence of nearly identical facts, parties, and issues, five separate lawsuits are necessary to handle the two declaratory judgment claims and the various infringement claims among the parties. As will be discussed in Section B, *infra*, that is exactly what the first-to-file rule is supposed to protect against. *See Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp.2d 627, 635 (E.D.Va. 2006) ("The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources.").

**B.      Defendants Fail to Meaningfully Address and Admit the Applicability of the First-to-File Rule.**

As Defendants should be well aware given the extensive nature of Smithfield Packing's briefing in the Puerto Rico Action (*see* Exs. A & D), Defendants' Motion must fail due to the clear applicability of the first-to-file rule.[7]

Defendants did not dispute in Puerto Rico, and do not dispute in their instant motion, that all of the claims in both the instant action and the Puerto Rico action involve *nearly identical* issues, facts, and parties. As such, the first-to-file rule clearly applies.

---

[7] We especially point this Court to pages 12-14 of Smithfield Packing's original memorandum in that briefing (Ex. A. to this Memorandum) discussing the District of Puerto Rico cases of *BMJ Foods Puerto Rico, Inc. v. Metromedia Steakhouse Co.*, 562 F. Supp.2d 229 (D.P.R. 2008) and *Aguakem Caribe, Inc. v. Kemiron Atlantic, Inc.*, 218 F. Supp.2d 199 (D.P.R. 2002). While only persuasive authority in this Court, those two cases are completely on four corners with the issues presented in both Smithfield Packing's Puerto Rico Motion and Defendants' Motion in the instant action and make clear that all of the issues in both the Puerto Rico action and the instant action should be heard here in the Eastern District of Virginia as Smithfield Packing's Complaint was filed two months before Suárez filed its action in Puerto Rico.

Exceptions to the first-to-file rule are extremely rare.  To their credit, Defendants do not attempt to say that an exception to the rule applies in this case.[8]  Instead, Defendants' only argument for why this Court should not apply the first-to-file rule is a single vague reference (at 12) to the concept that the first-to-file rule is not "unyielding," and so, a court may use its discretion to bypass the rule.

Defendants are clearly hoping that this Court will not dig too deeply into that argument, because while the first-to file rule may not be *unyielding*, it is pretty close, especially in the courts of this Circuit (as well as the First Circuit where the Puerto Rico action lies).

The first to file rule "states that in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp.2d 627, 635 (E.D.Va. 2006).  The rule "*requires* substantially overlapping cases filed in separate fora to be resolved in the forum where the initial case is filed unless a balance of conveniences favors the second *action*." *Fisher v. Rite Aid Corp.*, 2010 WL 2332101, at *2 (D. Md. June 8, 2010) (emphasis added) (*citing Smart Tech., Inc. v. Polynesian Corp.*, 2004 U.S. Dist. LEXIS 29483, at *5-6 (E.D.Va. Oct. 20, 2004) and *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 (4th Cir. 1974)). *See also Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594-95 (4th Cir. 2004).  When two similar cases are filed, the first-filed lawsuit must proceed "to the exclusion of" and "without interference from" any subsequently-filed lawsuits. *Carbide & Carbon Chem. Corp. v. U.S. Indus. Chems., Inc.*, 140

---

[8] Defendants know that Smithfield Packing made the first-to-file rule the core of Smithfield Packing's motion in Puerto Rico—and did not dispute its applicability—and Defendants briefly mention the first-to-file rule in Defendants' Motion but do not state whatsoever that the rule is inapplicable for any reason (such as a large disparity of issues or a sham filing by Smithfield Packing—both of which would be frivolous arguments).  Defendants are certainly estopped from putting such arguments into their Reply Brief and "sandbagging" Smithfield Packing on this issue.

F.2d 47, 49 (4th Cir. 1944); *Allied-General Nuclear Servs. v. Commonwealth Edison Co.*, 675

F.2d 610, 611 n.1 (4th Cir. 1982). "Due to its importance in ensuring judicial efficiency,

consistency and comity, courts have noted that the rule 'should not be disregarded lightly.'"

*Fisher*, 2010 WL 2332101, at *2 (dismissing "substantially similar" matter—although not as

substantially similar as the instant action to the Puerto Rico action—due to the first-to-file rule

and *quoting Neuralstem, Inc. v. Stemcells, Inc.*, 573 F. Supp.2d 888, 900 (D. Md. 2008)).

"[W]hile there are exceptions, departure from the rule must be based upon 'sound reason[s] that

would make it unjust or inefficient to continue the first filed action.'" *Colbond, Inc. v. North*

*American Green, Inc.*, 2000 WL 33422746, at *1 (W.D.N.C. May 8, 2000) (*quoting Genentech,*

*Inc. v. Eli Lilly and Co.*, 17 U.S.P.Q.2d 1241, 1244 (Fed. Cir. 1993)).

Furthermore, as long as the case has been filed in any court where venue is allowable, a

"defendant carries a *particularly heavy burden* when it moves pursuant to Section 1404(a) to

transfer." *Colbond*, at *2 (quotations omitted) (emphasis added). In *Colbond*, the court strictly

adhered to the "significant" first-to-file rule despite the second action being filed only two days

later.[9]

### C.     Defendants Have Not Met Their Heavy Burden to Transfer.  Moreover, This Case Cannot Be Transferred for the Mere Convenience of a *Single Defendant.*

When it comes to motions to transfer a case under Section 1404(a) (based on a balance of

convenience), as long as plaintiff has sued in *any* proper forum, defendant bears a "particularly

heavy" burden for proving that a case should be transferred. *Colbond*, at *2. "[U]nless the

---

[9] Quoting another case, *Colbond* also stated that if a defendant were to try to overcome the rule by claiming some sort of exception, it would have the "burden of proof [to] prove that the *sole reason* [for filing the first action] was . . . forum shopping" and that such burden "cannot" be met when plaintiff sues in the forum of its principal place of business. *See Colbond*, at *3 (*quoting Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 874 F. Supp. 630, 632 (S.D.N.Y. 1995)) (emphasis in *Colbond*).

balance is tipped strongly in favor of the moving party, plaintiff's choice of forum should not be disturbed. *Id.* (*citing Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)). *See also Ancient Sun Nutrition, Inc. v. Oregon Algae, LLC*, 2010 WL 3719503, at *3 (W.D.N.C. Sept. 17, 2010) (also stating, "[u]pon a motion to transfer, the moving party carries the burden and the burden is heavy"). *Colbond* continued: "As this court has noted previously, it is black letter law that plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not lightly be disturbed." *Id.* (quotations omitted). *See also Titan Atlas Manuf., Inc. v. Sisk*, 2011 WL 3665122 (Slip Op. W.D. Va. Aug. 22, 2011). Obviously, the first-to-file rule would be a reason to disturb such a choice, but here, the *instant* action was the first action filed.

In the recent case of *Titan Atlas*, the defendants moved to transfer even though theirs was the second-filed case as it is in the instant situation. The *Titan* court first noted that plaintiffs were the first to file and that the typical rule is that in such circumstances, "the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Id.* However, the court then analyzed whether the conveniences of all the parties taken together were so disparate as to require transfer. It stated that to transfer, "the balance of conveniences must weigh strongly in favor of the moving party. The party seeking a transfer cannot obtain it by bare balance of convenience in his or her favor." *Id.* (also *citing Collins*, 748 F.2d at 921-22). Furthermore, the moving party cannot just show how *it* will be convenienced. It has the burden to show that "judicial economy and convenience to *all parties* favor suit in another forum." *Id.* (quotations omitted) (emphasis added).

One thing that is striking from Defendants' motion is that it only addresses the convenience of Suárez (which is one company for all real purposes). It does not explain why

Puerto Rico is convenient for the witnesses and documents and other evidence from *Virginia*. It does not explain why Puerto Rico is convenient for the witnesses and documents and other evidence from *Ohio*. It does not address the potential non-party witnesses and evidence from other districts and their convenience. It does not appear that Suárez has even attempted to satisfy its "particularly heavy burden" to show that the balance of conveniences for "all parties" so overwhelms Smithfield Packing's choice of forum and the first-to-file rule that this Court should even consider a transfer.

Regarding the few arguments Defendants do present, they have all been addressed and rejected by the courts within this Circuit. For example, in *Titan Atlas*, the court stated that the convenience of defendants' own witnesses "carries little weight in the transfer analysis [as] traveling to the plaintiffs' chosen forum . . . [is] a cost of doing business with out-of-state companies." *Titan Atlas* (Slip Op.). That goes for Defendants' documents as well, since "in modern litigation, documentary evidence is readily reproduced and transported from one district to another." *Id.* The court noted with importance that defendants had not shown that any witnesses it named "would be unwilling to testify voluntarily" in plaintiffs' forum (and this Court should be highly skeptical if Defendants attempt to do that now in any Reply). *Id.* Finally, *Titan Atlas* held that *even if* "the events upon which the action is founded occurred outside the forum . . . this is not a sufficient reason in and of itself to justify transfer." *Id.* After discussing the particulars of its own case (and demonstrating how in these sorts of cases there are often relevant events that have occurred in both fora), the court stated that in any infringement allegation, both the venue of the intellectual property holder and the venue of the alleged infringer have a stake because the intellectual property holder will be harmed in its home venue by an infringement and the alleged infringer will be harmed in its home forum if the allegations

are false.  In sum, *Titan Atlas* (among other cases) systematically eliminates all of Defendants' arguments—and then some—in the instant motion.

Similarly, in *Neuralstem, Inc. v. Stemcells, Inc.*, 573 F. Supp.2d 888 (D. Md. 2008), plaintiff filed a declaratory judgment action in the District of Maryland and the defendant filed an infringement action against plaintiff, "[j]ust hours after," in another forum.  *Id.*, at 890.  After denying defendant's motion for improper venue in a mere footnote, *see id.* at 899 n. 13, the court then addressed defendant's motion to transfer to the second forum.  The court first noted the "strong presumption" that both actions should be decided by the first-filed forum, *id.* at 900, and that the "priority" established by the first-filed action, "should not be disregarded lightly."  *Id.* (quotations omitted).  *Neuralstem* them examined the convenience of the parties (and, as this Court can see, the facts there are similar to the facts in the instant action).  *See id.*, at 901.  The *Neuralstem* court stated that **even when considering the balance of conveniences in a motion to transfer**, the filing of plaintiff's declaratory judgment claim as the first-filed complaint and plaintiff's choice of forum to file that complaint "must be entitled to substantial weight," especially if it was plaintiff's "home forum."  *Id.*, at 902.  The court then held that while it recognized that there were "several witnesses and Defendants" in the second-filed forum, there were also several witnesses in Plaintiff's home and first-filed forum, "making both forums convenient to the witnesses and parties."  *Id.*  In addition, the court rejected defendants' claim that the Northern District of California, home to the second-filed action, could handle California-specific claims any better than the first-filed court in Maryland, since "federal courts routinely resolve" such supplemental claims from other states.  *Id.*, at 902.  Therefore, the court held that there was nothing presented "warrant[ing] a departure from the first-to-file rule."  *Id.*

On point with *Neuralstem*, there is no question that—given the scope of the instant dispute—there are conveniences on all sides. As clearly shown in the Bailey Declaration (Ex. B to this Memorandum), Smithfield Packing will have witnesses and documents squarely located in the Eastern District of Virginia and many of the events in this case occurred in the Eastern District of Virginia. This will be especially true for Smithfield Packing's Declaratory Judgment claim in the instant action as well as the compulsory counterclaims of alleged infringement against Smithfield Packing as drafted by Suárez on the same facts and issues, but filed in Puerto Rico. We do not doubt that Suárez will likewise have witnesses located in Puerto Rico relevant to its own declaratory judgment claim and attempted defense of Smithfield Packing's infringement claim. Unmentioned by Defendants' Motion are the Ohio witnesses and evidence for Fresh Mark and potential witnesses in other states (such as Conagra in Nebraska). *See The Learning Network, Inc. v. Discover Comm'n, Inc.*, 11 Fed. Appx. 297, 302 (4th Cir. 2001) (unpub.) (affirming the lower court's adherence to the first-to-file rule by both allowing the trademark declaratory judgment action first-filed in its court to continue while enjoining defendant from continuing its second-filed infringement action elsewhere; the Fourth Circuit found that the court did not abuse its discretion in finding that the rule should not be overcome by the "balance of conveniences," stating: "As is often the case, there are factors counseling in favor of both fora."). *See also Ancient Sun Nutrition, Inc. v. Oregon Algae, LLC*, 2010 WL 3719503 (W.D.N.C. Sept. 17, 2010) (analyzing eleven factors after defendant in the first-filed action brought a transfer motion, and deciding that nine were neutral and that the first factor, plaintiff's choice of forum, "weighs heavily" in favor of keeping the action in the first-filed court). Interestingly, in *Ancient Sun*—a contract dispute—"most of the witnesses" were located in the forum of the *second-filed action* since that case—unlike the instant dispute—centered on

the quality issues of a product produced there. However, the court denied the motion to transfer, as plaintiff's choice of forum in a first-filed action "must be given greater weight than the cost saving that may be realized through prosecuting this action in [the second-filed forum]." *Id.* at *6.

## IV.   CONCLUSION

For the foregoing reasons, including a) the consistent and black-letter precedent that similar filings in two fora should be heard in the forum of the first filing and, b) Defendants not having met their particularly heavy burden to show that the balance of convenience is so substantially in favor of the District of Puerto Rico that this Court should ignore the first-to-file rule and Plaintiff's choice of its home forum, Smithfield Packing respectfully requests that Defendants' Motion be denied in all respects.

**WHEREFORE,** Defendant The Smithfield Packing Company Incorporated respectfully requests that this Honorable Court deny Defendants' Motion.

**RESPECTFULLY SUBMITTED.**

Dated: Falls Church, VA
      September 30, 2011

THE SMITHFIELD PACKING
COMPANY, INCORPORATED

By Counsel

REED SMITH LLP

By: _____

Brad R. Newberg (VSB # 73654)
REED SMITH LLP
3110 Fairview Park Dr., Ste. 1400
Falls Church, VA 22042
(703) 641-4272
Fax: (703) 641-4340
bnewberg@reedsmith.com
*Attorneys for Plaintiff*
The Smithfield Packing Company
Incorporated

OF COUNSEL:

REED SMITH LLP

Carl H. Pierce
Daniel Mateo
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100
Fax: (215) 851-1420
cpierce@reedsmith.com
dmateo@reedsmith.com

## CERTIFICATE OF SERVICE

I, Brad R. Newberg, hereby certify that on this 30th day of September, 2011, I caused the

foregoing Plaintiff's Response Memorandum in Opposition to Defendants' Motion to Dismiss

or, in the Alternative, to Transfer Venue to be electronically filed with the Clerk of Court using

the CM/ECF system, which will send notification of such filing to all attorneys of record.


Brad R. Newberg (VSB # 73654)
REED SMITH LLP
3110 Fairview Park Dr., Ste. 1400
Falls Church, VA 22042
(703) 641-4272
Fax: (703) 641-4340
bnewberg@reedsmith.com
*Attorneys for Plaintiff*
The Smithfield Packing Company Incorporated