

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

FILED

MAR 1 4 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

THE SMITHFIELD PACKING COMPANY,
INC.

       **Plaintiff,**

       **v.**

V. SUÁREZ & CO., INC.,

PACKERS PROVISIONS CO. OF
PUERTO RICO, INC.

**and**

FRESH MARK, INC.

       **Defendants.**

**CIVIL ACTION NO. 2:11cv294**

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants', V. Suárez & Co. and its subsidiary Packers Provisions Co. of Puerto Rico, Inc. (collectively "Suárez"), Motion to Dismiss or in the Alternative, to Transfer Venue, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a). Defendant Fresh Mark, Inc. joins the Motion to Transfer; however, it has not joined Suárez's Motion to Dismiss. For the reasons stated herein, Defendants' Motion to Dismiss is **DENIED** and Defendants' Motion to Transfer is **DENIED.**

## I. FACTUAL & PROCEDURAL HISTORY

Plaintiff, The Smithfield Packing Company, Inc. ("Smithfield") is a Delaware corporation with its principle place of business in Smithfield, Virginia. Second Am. Compl. ¶ 4. Defendant V. Suárez & Co., Inc. is a Puerto Rico corporation with its principle place of business in Guaynabo, Puerto Rico. Defendant Packers Provision Co. of Puerto Rico, Inc. is also a Puerto Rico corporation with its principle place of business in San Juan, Puerto Rico. Defendant Fresh Mark, Inc. is an Ohio corporation with its principle place of business in Massillon, Ohio.

Suárez purchased goods from Smithfield for resale in Puerto Rico. Second Am. Compl. ¶ 12. The parties' dispute arises over Smithfield's distribution of the SHORGOOD mark chicken franks to Suárez. Smithfield claims that it has sold chicken franks under the SHORGOOD mark for many years. Second Am. Compl. ¶ 14. According to Smithfield, Conagra Foods ("Conagra") initially permitted Smithfield to sell products using the SHORGOOD mark through a licensing agreement. Second Am. Compl. ¶ 14. Smithfield alleges that in or about 2005, Conagra abandoned the SHORGOOD brand, and Smithfield became the exclusive seller of the brand. Second Am. Compl. ¶ 15.

In 2009, Smithfield filed a federal trademark application claiming a date of first use as early as 2006. Second Am. Compl. ¶ 16.[1] On June 17, 2011, Smithfield contends that the United States Trademark Registration Numbers 3,978,570 and 3,978,571 for the SHORGOOD mark and design issued in the name of Smithfield. Second Am. Compl. ¶¶ 17-18.[2]

Approximately two months earlier on April 7, 2011, Suárez sent Smithfield a correspondence ordering it to cease production of the SHORGOOD brand because Suárez had

---

[1] Smithfield notes that no party opposed their application after it was published in June 2009. *See* Second Am. Compl. ¶ 16.

[2] Suárez also claims that it submitted an application to the Puerto Rico Department of State regarding the SHORGOOD brand. Decl. Clotilde R. Perez Pietri ¶ 19.

found an "alternate source" for SHORGOOD products. Second Am. Compl. ¶ 19. On April 8, 2011, Smithfield, believing Fresh Mark, Inc., was the alternate source, notified Fresh Mark of its trademark rights to the SHORGOOD brand. Second Am. Compl. ¶ 20. Smithfield refused Suárez's demand.

On May 16, 2011, Smithfield learned that SHORGOOD products that it had not produced were being sold. Second Am. Compl. ¶ 22. These products were "Packaged for V. Suárez". Second Am. Compl. ¶ 22. Smithfield claims that it has not consented to any Defendant's use of the SHORGOOD mark. Second Am. Compl. ¶ 26. Consequently, on May 24, 2011,[3] Smithfield filed this action against Suárez, Packers, and Fresh Mark seeking declaratory relief as well as pursuing multiple claims of trademark infringement pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et. seq.*, including false designation of origin and unfair competition. Smithfield also pursues trade dress infringement under federal statutory law. Second Am. Compl. ¶ 1.

On July 20, 2011, Defendants filed their own action in the United States District Court for the District of Puerto Rico alleging similar claims against Smithfield. Then, on September 19, 2011, Defendants responded to Smithfield's Complaint in this case by filing the instant Motion to Dismiss or, in the Alternative, to Transfer Venue, alleging venue in this district is improper. If the Court does not dismiss this action, Defendants contend that the Court should transfer the case to the United States District Court for the District of Puerto Rico as the interest of justice mandates transfer. Defs'. Mot. Dismiss or Transfer 2. On March 7, 2012, the Court held a hearing on the instant motion.

---

[3] Smithfield filed the Second Amended Complaint on August 12, 2011.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to move for dismissal when the court in which a case is filed is an inappropriate venue for the action. "When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper." *Flexible Benefits Council v. Feltman*, 1:08cv371, 2008 U.S. Dist. LEXIS 46626, at *16 (E.D. Va. June 16, 2008) (citing *Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979)), *aff'd and rev'd in part on other grounds*, 424 F. App'x 228 (4th Cir. 2011). If the court finds that venue does not lie in the district where the case is filed, the court may dismiss it or, if it would be in the interest of justice, transfer it to a district where it could have been brought in the first instance. 28 U.S.C. § 1406(a).

When venue is not founded solely upon diversity of citizenship,[4] it is governed by 28 U.S.C. § 1391(b) which provides, in pertinent part, that venue is proper only "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." *Id.* at § 1391(b)(2).[5] Generally, the court must have proper venue for each separate claim in a complaint. *See Greenberry's Franchising Corp. v. Park et al.*, No. 3:10cv0045, 2010 U.S. Dist. LEXIS 131065, at *7 (W.D. Va. Dec. 10, 2010).

The plaintiff's forum selection is given considerable weight especially in cases where the plaintiff files the action in its home state. *See, e.g., Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984); *Capital One Fin. Corp. v. Drive Fin. Servs.*, 434 F. Supp. 2d 367, 375 (E.D. Va. 2006). However, "[e]ven when the plaintiff sues in its home forum, that fact is not by itself controlling

---

[4] Plaintiff's claims are based on federal law. Therefore, diversity is not the sole basis for federal jurisdiction. As no special venue provision applies to this case, the general venue statute, 28 U.S.C. § 1391 applies.
[5] It should be noted that on December 7, 2011, 28 U.S.C. § 1391 was amended. However, these amendments only apply to actions filed on or after December 7, 2011. *See* Pub. L. No. 112-63, 125 Stat. 763 (2011). This action was commenced on May 24, 2011.

and the weight of that factor depends on the nexus tying the case to the forum." *Gebr. Brasseler GmbH & Co. KG ("GBL") v. Abrasive Tech.*, No. 1:08cv1246, 2009 WL 874513, at *2 (E.D. Va. Mar. 27, 2009) (citation omitted). Consequently, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins*, 748 F.2d at 921.

Further, in a case where the same parties are involved in multiple actions, the court may apply the first-to-file rule. The first-to-file rule states that "when multiple suits are filed in different federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Titan Atlas Mfg., Inc. v. Sisk*, No. 1:11cv00012, 2011 WL 3665122, at *15 (W.D. Va. Aug. 22, 2011) (citing *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n. 1 (4th Cir. 1982)) (internal citations omitted). This rule, however, is discretionary as "the court must balance the convenience between the two actions before deciding whether application of the first-to-file rule is appropriate in a given situation." *Titan Atlas*, 2011 WL 3665122, at *15.

When a court finds that it is the proper venue for an action, it may "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision to transfer an action to another district is within the district court's sound discretion. *In re Ralston*, 726 F.2d 1002, 1005 (4th Cir. 1984); *S. Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956), *cert. denied*, 352 U.S. 953 (1956).

Transfer from one proper forum to another is dependent upon the Court weighing a number of factors to determine the appropriate venue for an action. These factors include, but are not limited to, "(1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3)

5

the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the

possibility of a view; (6) the interests in having local controversies decided at home; and (7) the

interests of justice." *AFA Enters., Inc. v. American States Ins. Co.*, 842 F. Supp. 902, 909 (S.D. W.

Va. 1994) (citations omitted).  If venue is proper in the plaintiff's chosen forum, the party moving

for transfer of venue bears the heavy burden of proving that transfer is warranted. *Beam Laser*

*Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d. 515, 518 (E.D. Va. 2000).

### III. DISCUSSION

**A. The Eastern District of Virginia is a Proper Venue for this Action**

Venue is proper in this Court under 28 U.S.C. § 1391(b).  Defendants dispute venue by

arguing that in trademark actions, injury occurs in the state where the tort occurs.  Defs.' Mem.

Supp. 8.  In other words, Defendants believe the relevant inquiry for the Court is where the alleged

passing off of the product takes place: "Unlike a patent infringement case, where the infringement

often predates the sale of the products, infringement in trademark cases only occurs once the

allegedly infringing products are injected into the stream of commerce and a likelihood of

confusion can be demonstrated." *USA Labs., Inc. v. Bio-Engineered Supplements & Nutrition,*

*Inc.*, No. 1:09cv47, 2009 U.S. Dist. LEXIS 37797, at *8 (E.D. Va. May 4, 2009) (citing *Tefal, S.A.*

*v. Products Int'l Co.*, 529 F.2d 495, 496 n.1 (3d Cir. 1976)); *see also Vivant Pharms., LLC v.*

*Clinical Formula, LLC*, No. 10-21-537-CIV-COOKE/BANDSTRA, 2011 U.S. Dist. Lexis 37343,

at *17 (S.D. Fla. Mar. 31, 2011) ("A 'substantial part' of the events giving rise to a trademark

claim occur in any district where customers are likely to be confused by the accused goods,

'whether that occurs solely in one district or many.' ").

Smithfield claims venue is proper here because the central question before the Court is ownership of the trademark, not trademark infringement. Smithfield is pursuing a declaratory judgment action, and Smithfield argues that, at a minimum, a substantial part of the events giving rise to this claim occurred in this district. Thus, this Court is a proper venue for Smithfield's claims. Suárez has never argued that this Court is an improper venue for the declaratory judgment action, but merely that it is an improper venue for the trademark infringement claims. Because the Court believes there exists a substantial nexus between this forum and Smithfield's claims, the Court will lay out those events as they relate to the declaratory judgment action.

Smithfield declares that Suárez initiated this litigation when it sent Smithfield a cease and desist letter. After receiving this letter in Virginia, Smithfield filed the instant action. Pl.'s Resp. Mem. Opp'n Defs.' Mot. Dismiss or Transfer 15. Smithfield is headquartered in Virginia. All documentation and witnesses related to Smithfield's ownership of the trademark are located in this district. *Id.* Furthermore, the Court is mindful of the importance of the preexisting relationship between Conagra and Smithfield as it relates to determining the proper ownership of the trademark. Any evidence which relates to the Smithfield-Conagra relationship and Conagra's abandonment of the SHORGOOD mark would be found here. Smithfield manufactures and distributes its product here. In order to establish ownership of the trademark, Smithfield will be relying almost entirely on documents and witnesses located in this forum. Therefore, the Court reasons that a substantial part of the events giving rise to Smithfield's claim occurred in the Eastern District of Virginia.

Therefore, the question becomes whether the existence of the declaratory judgment action alone makes the Eastern District of Virginia a proper venue for this case. Despite the nexus

7

between the declaratory judgment action and this forum, Suárez seeks to have this action dismissed or moved to the District of Puerto Rico because Suárez only sold the SHORGOOD mark in Puerto Rico. They cite to three cases (including one from this district) where courts have concluded that trademark infringement occurs where the product is injected into the stream of commerce. Yet, in the three primary cases to which Suárez cites for that proposition, those courts did not adjudicate the question of ownership of the trademark. Nor was there a declaratory judgment action at the center of those controversies. *See, e.g., Tefal*, 529 F.2d at 496 ("Tefal is the registered owner of the United States trademark 'T-Fal' . . . ."); *USA Labs*, 2009 U.S. Dist. LEXIS 37797, at \*1 ("This is a civil action for federal unfair competition, false representation and false designation of origin . . . ."); *Vivant Pharms.*, 2011 U.S. Dist. LEXIS 37343, at \*1 ("Vivant owns registered and unregistered trademarks that are associated Vivant products."). This case is quite different from *Tefal, Vivant Pharms.,* and *USA Labs.* There is a clear dispute between both parties about the ownership of this trademark. Smithfield contends in its home forum that it owns the mark. Suárez contends in its home forum that it has rights to the mark. In fact, at the hearing on the instant motion, counsel for Suárez argued that it is possible for both parties to have co-ownership of the SHORGOOD mark. Counsel's argument further buttresses the Court's conclusion that, at some point, a court must determine the ownership of the SHORGOOD trademark.

The Court concludes that the issue of ownership is at the core of this action. Because this Court is a proper venue to hear the central claim of this action, judicial economy mandates hearing Smithfield's entire action in this Court instead of severing the ancillary trademark infringement claims from the declaratory judgment claim. *See e.g., Greenberry's Franchising Corp.*, 2010 U.S. Dist. LEXIS 131065, at \*13 (After determining that plaintiff's central claims should be heard in

8

the Eastern District of Virginia, the Court found that "convenience, efficiency, and justice" also favored hearing the remaining claims in the Eastern District of Virginia.). The documents and witnesses which will largely determine Smithfield's ownership of a trademark exist primarily in Virginia. Put simply, the weight of the declaratory judgment action trumps the weight of the remaining claims. Once the question of ownership has been determined, then and only then can the secondary claims be handled. Given the sheer importance of the ownership question to this litigation, the Court finds that it is a proper venue to hear Smithfield's declaratory judgment claim, and as a result, the remainder of Smithfield's claims against Suárez.

## B. Transfer to the District of Puerto Rico is Improper for this Action

"When a lawsuit is filed in multiple forums, the Fourth Circuit generally adheres to the 'first-filed' rule, which holds that 'the first suit should have priority, absent the showing of [a] balance of convenience in favor of the second action.' " *US Airways, Inc. v. US Airline Pilots Ass'n*, No. 3:11-cv-371-RJC-DKC, 2011 WL 3627698, at *1 (W.D.N.C. Aug. 17, 2011) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594-95 (4th Cir. 2004)) (citations omitted). While the Court is tasked with adjudicating the claims Smithfield filed in this Court, it is still mindful of the claims Suárez has filed in Puerto Rico. Suárez concedes that it has filed a substantially similar lawsuit to this one in the District of Puerto Rico. Aside from Fresh Mark, the Puerto Rico litigation involves the same parties. Both actions involve a declaratory judgment claim, a federal false designation of origin claim, a federal trade dress infringement claim, and a prayer for injunctive relief. While the Puerto Rico action involves a claim for tortious interference as well as a claim for violation of Puerto Rico registered trademark rights, the Court finds that an unquestionable likeness exists between these two actions. It is clear to the Court that

9

when two parties have filed seemingly identical actions in two separate courts, the first-to-file rule

is applicable. *See Titan Atlas*, 2011 WL 3665122, at *15 (citations omitted). The first-to-file rule

is not an "unyielding principle", but the Court declines to find an exception to the rule in a case

where the facts do not necessitate such a finding. *See US Airways, Inc.*, 2011 WL 3627698, at *1.

Suárez has not provided this Court with sufficient justification for deviating from or finding an

exception to this well-established principle. [6]

Now that the Court has found venue proper in the Eastern District of Virginia, the Court

may still transfer this action to any district where it might have been brought for the convenience

of the parties and witnesses, and in the interest of justice. 28 U.S.C. § 1404(a). In determining

"whether or not to transfer venue, the courts will consider: (1) the plaintiff's choice of venue,

which is entitled to substantial weight, (2) convenience of the parties and witnesses; and (3) the

interests of justice, which encompasses all of the factors unrelated to witness and party

convenience." *Capital One Fin. Corp.*, 434 F. Supp. 2d at 375 (citing *Brown Mfg. Corp. v. Alpha

Lawn & Garden Equip., Inc.*, 219 F. Supp. 2d 705, 709 (E.D. Va. 2002)).

1. *Plaintiff's Choice of Forum*

Smithfield first filed this action in its home forum, and the Court affords great deference to

its choice. "Even when the Plaintiff sues in its home forum, that fact by itself is not controlling and

---

[6] The Court notes that the factors considered in determining if an exception to the first-to-file rule exists or whether a transfer of venue is warranted are substantially similar. *See US Airways, Inc.*, 2011 WL 3627698, *3. Because the Court reaches the same conclusion regarding each balancing test, this Memorandum Opinion and Order will only analyze the convenience factors once. At the hearing, Suarez argued that, pursuant to *US Airways*, the second-to-file Plaintiff's forum choice is entitled to deference under the first-to-file factor test. The *US Airways* court was the second-filed court, and it held that the second-to-file plaintiff's case had a strong connection to the controversy. *Id.* Moreover, both cases to which the *US Airways* court cites for support of this proposition were the second-filed forums. *See Quesenberry v. Volvo Group N. Am., Inc.*, No. 1:09cv22, 2009 WL 648658, at *1 (W.D. Va. Mar. 10, 2009); *United Energy Distributors, Inc. v. Rankin-Patterson Oil Co., Inc.*, No. 7:07-3234-HMH, 2007 WL 4568997, at *2 (D.S.C. Dec. 20, 2007). In this case, this Court is the first-filed Court, and it seeks to determine whether to dismiss the claims of the first-filed Plaintiff, Smithfield. Therefore, the Court declines to follow *US Airways* and will not give deference to the second-to-file Plaintiff in the first-filed Court.

10

the weight of the factor depends on the nexus tying the case to the forum." *GBL*, 2009 WL 874513,

at *2 (citation omitted).  There is no evidence that this is a case where a plaintiff forum shopped to

gain an unfair advantage or engaged in some other deceptive practice to disadvantage a defendant.

Smithfield filed in its home forum, and as discussed above, there are substantial ties between this

forum and Smithfield's claims.  Therefore, the Court affords substantial weight to the Plaintiff's

choice of forum.

### 2. *Convenience of the Parties and Witnesses*

Regardless of whether this action is held in Virginia or in Puerto Rico, witnesses will have

to travel.  The Court will not simply shift that burden from the Plaintiff to the Defendants.  The

existence of witnesses who are currently members of the parties is of little consequence to the

Court.  Defendants can compel the attendance of party witnesses.  The Court may lack power to

compel some nonparty witnesses to testify at trial; however, neither party has presented any

evidence that witnesses would be unwilling to testify voluntarily at trial.[7]  Even if the convenience

of nonparty witnesses may weigh slightly in favor of Suárez, this does not justify disturbing

Smithfield's choice of forum.

### 3. *The Interest of Justice*

The interest of justice category encompasses factors such as "the pendency of a related

action, the court's familiarity with the applicable law, docket conditions, access to premises that

might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the

possibility of harassment." *Id.* at *5.  "Another factor is the interest of having local controversies

---

[7] Aside from possible difficulty compelling witnesses to attend trial in Virginia, Defendants expressed concern that documents (in both English and Spanish) as they relate to this case are housed in Puerto Rico.  Yet, there is no evidence that Defendants will have any difficulty transporting documents from Puerto Rico to Virginia: "The Court gives very little weight to the ease of access to sources of proof because '[w]hen documents can be transported [or] easily photocopied, their location is entitled to little weight." *See GBL*, 2009 WL 874513, at *3.

11

decided at home." *Id.* (citations omitted).  The Court finds that most of these factors are inconsequential to this matter or have been addressed previously.  It does, however, bear noting that because this forum is Smithfield's home forum, the Court does have an interest in deciding this controversy here.  Viewed holistically, this factor weighs against transfer.

Defendants have failed to prove that transferring this case to the District of Puerto would serve any end other than to shift the balance of inconvenience from the Plaintiff to the Defendants.  Suárez has asked the Court to strip Smithfield, a Virginia Plaintiff, of the right to file suit in its home forum without providing the Court justification for taking away this right.  Absent more, the Court will not transfer this action.  The Eastern District of Virginia is a proper forum to adjudicate these claims.

## IV.  CONCLUSION

For the reasons stated above, it is **ORDERED** that Defendants' Motion to Dismiss is **DENIED** and Defendants' Motion to Transfer is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
March /3 , 2012

12